UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


FRANK WOOD,                           )         Case No. 1:09CV0044
                                      )
          Petitioner,                 )
                                      )
     vs.                              )         JUDGE KATHLEEN O'MALLEY
                                      )         (Magistrate Judge McHargh)
RICHARD HALL,                         )
          Warden,                     )
                                      )
                                      )
          Respondent.                 )         REPORT AND
                                      )         RECOMMENDATION
                                      )

McHARGH, Mag.J.

     The petitioner Frank Wood ("Wood") has filed a petition pro se for a writ of

habeas corpus, arising out of his 2004 convictions for rape and gross sexual

imposition of two minor children in the Medina County (Ohio) Court of Common

Pleas.  In his petition, Wood raises five grounds for relief:

     1.  Conviction obtained in violation of the Sixth Amendment guarantee
     to effective assistance of counsel. see: Strickland v. Washington, 466
     U.S. 668.

     2.  Conviction obtained in violation of the Sixth Amendment right to
     "conflict-free" representation. see: McMann v. Richardson (1970), 397
     U.S. 759, 771, fn. 14. see also: Cuyler v. Sullivan (1980), 466 U.S. 335,
     348; and, State v. Haberek (1988), 47 Ohio App. 3d 35, 38.

3.  Conviction obtained in violation of the Sixth Amendment right to effective assistance of counsel on "appeal as of right." see also: Crawford v. Washington (2004), 541 U.S. 36.

4.  Conviction obtained in violation of the Sixth Amendment right to a "fair trial" to and "due process of law" where defendant was prohibited from presenting relevant, probative and material expert testimony from a licensed clinical psychologist.

5.  The evidence was insufficient to prove the offense of vaginal intercourse beyond a reasonable doubt thereby depriving petitioner a fundamentally fair trial.

(Doc. 1, § 12.)


## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual and procedural

background:

This case arises from Appellant's convictions for rape and gross sexual imposition of two minor children, "S.L." and "K.S."

S.L. was adopted by Scott Sadowsky and Danielle Sadowsky when she was a toddler.  The Sadowskys were married at the time of the adoption.  S.L. is a biological relative of Scott Sadowsky.  The Sadowskys also have a son whose custody they share.  Ms. Sadowsky met Appellant in October 2003 when he came to the Sadowsky's home to perform repair work.  The two soon began an affair.  In July of 2004, Ms. Sadowsky and her children moved in with Appellant.  Shortly thereafter, Ms. Sadowsky became pregnant with Appellant's child.

On October 20, 2004, at approximately 5:15 a.m., Ms. Sadowsky awoke to find that Appellant was not in the bed with her.  She looked for him downstairs but could not find him.  When she walked back upstairs, Ms. Sadowsky called to Appellant by name.  According to Ms. Sadowsky, she then observed Appellant exit S.L's bedroom.  She immediately asked Appellant what he was doing in S.L.'s bedroom. Appellant told her "[l]et's talk about this in the morning[.]"  Ms. Sadowsky was immediately suspicious of Appellant's behavior.  The

2

next morning, she packed up her belongings and she and the children moved out of Appellant's home.

Thereafter, Ms. Sadowsky repeatedly asked S.L. if Appellant had touched her in an inappropriate way when he was in her bedroom. S.L. repeatedly denied that anything had happened.  However, on January 11, 2005, Ms. Sadowsky again asked S.L. if Appellant had done anything to her.  S.L. broke down and told Ms. Sadowsky that Appellant had sexually abused her.  The next day, Ms. Sadowsky took S.L. to the Montville Police Department where she was interviewed by a social worker.

K.S. is the daughter of Appellant's former wife, Robin Speelman (fka Robin Spencer).  Ms. Speelman and Appellant were married on May 12, 2000 and divorced at the end of January 2002.  Ms. Speelman has three daughters.  Appellant is not the father of any of Ms. Speelman's daughters.  Ms. Speelman lived with Appellant from December of 1999 through March or April of 2001.  K.S. is Ms. Speelman's eldest daughter.  K.S. moved in with her mother and Appellant sometime in the fall of 2000.  At the end of the summer of 2004, K.S. told her mother that Appellant had molested her.  Ms. Speelman eventually disclosed K.S.'s sexual abuse after she heard that Appellant was under investigation for abusing another child.

On August 3, 2005, Appellant was indicted on one count of rape of a victim under age 10, in violation of R.C. 2907.02(A)(1)(b)(B), a felony of the first degree and one count of gross sexual imposition of a victim under age 13, in violation of R.C. 2907.05(A)(4), a felony of the third degree.  Appellant pled not guilty.  Appellant's case proceeded to trial before a jury.  Appellant was convicted on both counts.

Appellant was sentenced to a term of life in prison for the rape conviction and three years incarceration for the gross sexual imposition conviction.  The court ordered that the sentences be served consecutively.  The court additionally found that Appellant was a sexual predator and a child victim predator.

(Doc. 6, RX 9, at 1-3; State v. Wood, No. 06CA0044-M, 2007 WL 1583999, at *1-*2

(Ohio Ct. App. June 4, 2007).)

Wood filed a timely appeal of his conviction, and set forth the following five assignments of error:

> 1. Defendant's Sixth Amendment right to effective assistance of counsel was violated where: (1) defense counsel had an ethical conflict based upon his prior representation of a key prosecution witness in her recent divorce from another state's witness, and their minor daughter was also a key state's witness in the case; (2) the conflict was not disclosed until after the commencemnet [sic] of trial during cross-examination of that previously-represented witness; (3) the previously-represented witness never waived her attorney-client privilege, and (4) defendant did not affirmatively waive his right to be represented by conflict-free defense counsel on the record.

> 2. Defendant's Sixth Amendment right to effective assistance of counsel was violated where the trial court failed to inquire into the conflict of interest on the part of defense counsel after the conflict was revealed early in trial.

> 3. The trial court abused its discretion by not declaring a mistrial when the conflict of interest on the part of defense counsel was revealed early in the trial, or, in the alternative, accepting defense counsel's offer to withdraw leaving co-counsel to try the case alone.

> 4. The trial court abused its discretion by excluding relevant defense expert testimony by a licensed clinical psychologist who examined defendant, conducted numerous tests on defendant, and prepared a written report of his findings and conclusions that defendant did not meet the diagnostic criteria for pedophilia.

> 5. There was insufficient evidence to support the jury's verdicts, and defendant-appellant's convictions of rape and gross sexual imposition were against the manifest weight of the evidence.

(Doc. 6, RX 7.)  On June 4, 2007, the court of appeals affirmed the judgment of the trial court.  (Doc. 6, RX 9; State v. Wood, No. 06CA0044-M, 2007 WL 1583999 (Ohio Ct. App. June 4, 2007).)

Wood filed a timely appeal to the Supreme Court of Ohio, which set forth the

following five propositions of law:

> 1. A court violates an accused's Sixth Amendment right to confront the witnesses against him when it allows the jury to convict an accused based on a child-victim's testimonial statements to her treating psychologist.

> 2. A court violates an accused's right to present a defense when, in a case involving allegations of sexual abuse on two young victims, the court prohibits the accused from presenting expert testimony that he does not possess the psychological traits of a pedophile. This error violates the Sixth and Fourteenth Amendments to the United States Constitution and Article One, Sections Ten and Sixteen of the Ohio Constitution.

> 3. A court violates an accused's Sixth Amendment right to representation by conflict-free counsel by failing to declare a mistrial or to appoint new counsel to represent the accused when: 1) the attorney labors under an actual conflict of interest arising out of his representation of one of the State's key witnesses against the accused in a case related to the case against the accused; 2) the court did not become aware of the conflict of interest until the witness revealed during her cross-examination that defense counsel had represented her in the related action; 3) the witness did not waive the attorney-client privilege; and 4) the accused did not affirmatively waive, on the record, his right to representation by conflict-free counsel.

> 4. To prove vaginal intercourse sufficient to secure a conviction under R.C. 2907.01(A), the State must present proof beyond a reasonable doubt of penetration of the vaginal canal, not merely penetration of the labia.

> 5. Appellate counsel's performance is prejudicially deficient under Strickland v. Washington (1984), 466 U.S. 668, where the record demonstrates a violation of the accused's rights under Crawford v. Washington (2004), 541 U.S. 36, but counsel fails to assert appropriate assignments of error to vindicate those rights.

(Doc. 6, RX 10.)  On Oct. 24, 2007, the state supreme court denied leave to appeal

and dismissed the case because it did not involve any substantial constitutional

question.  (Doc. 6, RX 12; State v. Wood, 115 Ohio St.3d 1444, 875 N.E.2d 104 (2007).)

On Aug. 31, 2007, while his appeal to the state high court was pending, Wood moved, under Ohio App.R. 26(B), to re-open his  appeal on the grounds that appellate counsel was ineffective.  Wood raised three arguments:

1.  The appellant was denied his U.S. 6th and 14th Amendment and Ohio Art. I, §10 and 16 Constitutional rights to the effective assistance of appellate counsel when counsel failed to raise for direct review that trial counsel was ineffective for failing to object to the State's use of subsequent other acts testimony which mislead the jury in it's adjudication on the indicted offense of rape, thus prejudicing the appellant to a fair trial.

2. The appellant was denied his U.S. 6th and 14th Amendment and Ohio Art. I, §10 and 16 Constitutional rights to the effective assistance of appellate counsel when counsel failed to raise for direct review that trial counsel was ineffective for failing to object to the prosecutorial misconduct, where the State shifted the burden of proof and argued defense counsel's opinion of the defendant's guilt, thus prejudicing the appellant to a fair trial.

3. The Appellant was denied his U.S. 6th and 14th Amendment and Ohio Art. I, §10 and 16 Constitutional rights to the effective assistance of appellate counsel, when counsel failed to raise for direct review, when the prosecutor denigrated defense counsel from personal opinion and associated the appellant's bad character and guilt therefrom, thus prejudicing him to a fair trial.

(Doc. 6, RX 13.)  The court of appeals denied the application.  (Doc. 6, RX 14.)

Wood filed an appeal of the denial to the Supreme Court of Ohio, raising three propositions of law:

1.  The Appellant was denied his U.S. 6th and 14th Amendment and Ohio Art. I, §10 and 16 Constitutional Rights to the effective assistance of appellate counsel was ineffective for failing to object to the State's use of subsequent other acts testimony which mislead the

jury in it's adjudication on the indicted offense of rape, thus prejudicing the appellant to a fair trial.

2.  The Appellant was denied his U.S. 6th and 14th Amendment and Ohio Art. I, §10 and 16 Constitutional Rights to the effective assistance of appellate counsel when counsel failed to raise for direct review that trial counsel was ineffective for failing to object to the prosecutorial misconduct, where the State shifted the burden of proof and argued defense counsel's opinion of the defendant's guilt, thus prejudicing the appellant to a fair trial.

3.  The Appellant was denied his U.S. 6th and 14th Amendment and Ohio Art. I, §10 and 16 Constitutional Rights to the effective assistance of appellate counsel, when counsel failed to raise for direct review, when the prosecutor denigrated defense counsel from personal opinion and associated the appellant's bad character and guilt therefrom, thus prejudicing him to a fair trial.

(Doc. 6, RX 15.)  On Feb. 6, 2008, the court dismissed the appeal because it did not involve any substantial constitutional question.  (Doc. 6, RX 16; State v. Wood, 116 Ohio St.3d 1510, 880 N.E.2d 484 (2008).)

Wood filed this petition for a writ of habeas corpus on Jan. 8, 2009.  (Doc. 1.)

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

7

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

Wood has filed his petition pro se.  The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed. Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519

8

(1972) (per curiam)).  Other than that, no special treatment is afforded litigants who decide to proceed pro se.  McNeil v. United States, 508 U.S. 106, 113 (1993) (strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

Several of the grounds put forward by Wood allege violations of Ohio law. The question before this federal habeas court is whether the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Federal habeas relief is not available for a claimed violation of state law, thus any alleged violation of Ohio law is not properly before this court.  See Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

The first three grounds of the petition are based on ineffective assistance of counsel.  Under the Sixth Amendment to the U.S. Constitution, "the right to counsel is the right to effective assistance of counsel."  Joshua v. DeWitt, 341 F.3d 430, 437 (6th Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). "Inherent in the Sixth Amendment right to counsel is the right to reasonably competent counsel and the right to counsel's undivided loyalty."  United States v. Hall, 200 F.3d 962, 966 (6th Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668, 692 (1984)).

The Sixth Circuit discussed the general standard for ineffective assistance of counsel in Monzo v. Edwards:

> To establish ineffective assistance of counsel under Strickland, the defendant must show that his counsel's performance fell below an objective standard of reasonableness and that his counsel's errors were so serious as to prejudice the defendant.  Review of counsel's performance is highly deferential and requires that courts "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."

Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002) (internal citations omitted).  See generally Strickland, 466 U.S. at 689 (two-part test).  A criminal appellant is constitutionally entitled to the effective assistance of counsel in his direct appeal, as well as at trial.  Evitts v. Lucey, 469 U.S. 387 (1985).

In the habeas context, this court considers petitioner's ineffective assistance claim "within the more limited assessment of whether the state court's application of Strickland to the facts of this case was objectively unreasonable." Washington v. Hofbauer, 228 F.3d 689, 702 (6th Cir. 2000).

In the context of a habeas claim that trial counsel had a conflict of interest, a slightly different standard of review is used.  When an attorney's representation results in "an actual conflict of interest that adversely affects the attorney's performance," the defendant's Sixth Amendment rights are violated.  McFarland v. Yukins, 356 F.3d 688, 705 (6th Cir. 2004) (citing Cuyler v. Sullivan, 446 U.S. 335, 349-350 (1980)).

10

Both an "actual conflict" and an adverse "effect on representation" are required to establish a Sixth Amendment violation.  McFarland, 356 F.3d at 705. These two elements are linked:

> [T]he Sullivan standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect. An "actual conflict," for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance.

McFarland, 356 F.3d at 705-706 (quoting Mickens v. Taylor, 535 U.S. 162, 172 n.5 (2002)).

However, the Supreme Court has noted that there is a distinction between joint, concurrent representation, and prior representation.  Mickens, 535 U.S. at 175.  The Court has never applied the heightened protections for conflict of interest to the latter types of cases, involving prior representation.  McFarland, 356 F.3d at 701 (citing Mickens, 535 U.S. at 176).

A.  Ineffective Assistance of Trial Counsel

The first two grounds are inter-related, as presented by petitioner.  See, e.g., doc. 1, Addendum to petition, at 10-13.  The first claims that Wood's conviction was "obtained in violation of the Sixth Amendment guarantee to effective assistance of counsel, in violation of Strickland v. Washington.  The second argues that his conviction was " obtained in violation of the Sixth Amendment right to 'conflict-free' representation," citing McMann v. Richardson, 397 U.S. 759, 771 n.14  (1970);

11

Cuyler v. Sullivan, 466 U.S. 335, 348 (1980); and State v. Haberek, 47 Ohio App. 3d 35, 38 (Ohio Ct. App. 1988).

> The state court of appeals addressed these two claims together, as follows:

> "An appellate court may analyze the prejudice prong of the Strickland test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice." State v. Kordeleski, 9th Dist. No. 02CA008046, 2003-Ohio-641, at ¶ 37, citing State v. Loza (1994), 71 Ohio St.3d 61, 83.  Accordingly, we will begin our analysis with a discussion of the prejudice prong of Strickland.  In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus.

> Prejudice will be presumed in a Sixth Amendment claim if the defendant shows that (1) his counsel actively represented conflicting interests and (2) such conflict of interest adversely affected his counsel's performance.  State v. Haberek (1988), 47 Ohio App.3d 35, 38; State v. Keith (1997), 79 Ohio St .3d 514, 535; Cuyler v. Sullivan (1980), 446 U.S. 335, 348.  "A reviewing court cannot presume that the mere possibility of a conflict of interest resulted in ineffective assistance of counsel." State v. Sanchez (May 4, 2000), 8th Dist. No. 76027, at *5.  The appellant must demonstrate something more than a "possibility of a conflict of interest[.]" State v. Manross (1988), 40 Ohio St.3d 180, 182.

> In the present case, Appellant asserts that he was denied the effective assistance of counsel at trial due to his attorney's prior representation of Danielle Sadowsky, the mother of one of the victims in the case and a key witness in the trial.

> The record reflects that Attorney Stanley's representation of Ms. Sadowsky in her recent divorce was not revealed until she testified on cross-examination.  On cross-examination, Ms. Sadowsky revealed that Attorney Stanley had represented her in her divorce proceedings.  Upon learning of this potential conflict, the State asserted that Ms. Sadowsky had to waive her attorney/client privilege before Attorney Stanley could participate in the case.

12

For the purposes of our analysis of Appellant's assignments of error, we accept Appellant's assertion that a conflict of interest existed. Nonetheless, Appellant's claims fail because he has not satisfied that second prong of the presumption of prejudice test, i.e. he has failed to demonstrate that his counsel's conflict of interest adversely affected his counsel's performance.  See Haberek, 47 Ohio App.3d at 38.  The record reflects that Attorney Green, not Attorney Stanley, cross-examined Ms. Sadowsky.  Appellant asserts that Attorney Stanley gained confidential information through his representation of Ms. Sadowsky that could have been used to prepare or assist Attorney Green, his co-counsel, in his cross-examination of Ms. Sadowsky, S.L., and/or Mr. Sadowsky.  Appellant has failed to explain how such confidential information hindered his counsel's performance.  The more logical inference is that such confidential information could have aided Appellant's case.

Moreover, Appellant acknowledges that Attorney Stanley "ceased to provide any active assistance of counsel at all to [Appellant]" after the trial court learned of the conflict.  The conflict of interest could not have adversely affected Attorney Stanley's performance if he "ceased to provide any active assistance of counsel to [Appellant]" after this relationship was exposed.

The cases cited by Appellant in support of his contention that his counsel's prior representation of a key prosecution witness violated his Sixth Amendment right to effective assistance of counsel are distinguishable from the within matter.  None of the cases cited by Appellant involved a defendant who was represented by more than one attorney.[FN1]  Rather, the cases cited by Appellant involved the defendant's sole counsel's conflict of interest.  [Case citations omitted.]

> FN1. The record reflects that when the conflict first arose, Attorney Stanley informed the trial court that he was "second chair" and that he was "not doing the trial."

Although we find that Appellant has failed to establish that he suffered prejudice as a result of his counsel's conflict of interest, we still have grave concerns about the behavior of Attorney Stanley in representing two clients with inherently conflicting interests and in failing to disclose such conflict to either the court or the State.

(Doc. 6, RX 9, at 5-9; Wood, 2007 WL 1583999, at *3-*4.)

13

This court does not find that the state court of appeals decision was an unreasonable application of, or contrary to, U.S. Supreme Court precedent.  The court of appeals found that Wood had failed to demonstrate that Counsel Stanley's conflict of interest adversely affected his performance, to the prejudice of Wood.  In his briefs to this court, Wood does not show any evidence of prejudice.  He appears to believe that the burden is on the respondent.  See, e.g., doc. 9, at 7.

Although the state court's focus was on the prejudice prong, Cuyler and Mickens apply only to joint representation, and have not been extended to other types of conflict of interest.  Benge v. Johnson, 474 F.3d 236, 244 (6th Cir.), cert. denied, 552 U.S. 1028 (2007); McFarland, 356 F.3d at 701.  The alleged conflict of interest at issue here did not arise out of joint representation, but from a prior representation.  Wood's claims fail because they are not based on clearly established federal law, as determined by Supreme Court precedent.  Benge, 474 F.3d at 244-245; Smith v. Hofbauer, 312 F.3d 809, 817 (6th Cir. 2002), cert. denied, 540 U.S. 971 (2003).  The petition for a writ of habeas corpus should not be granted on the basis of the first or second grounds.

### B.  Ineffective Assistance of Appellate Counsel

The third ground of the petition is based on ineffective assistance of appellate counsel.  To establish ineffective assistance of appellate counsel under Strickland, Wood must show that his counsel's performance fell below an objective standard of reasonableness, and that his counsel's errors were so serious as to prejudice the

14

defendant.  Monzo, 281 F.3d at 579.  To establish prejudice, Wood must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the appeal would have been different.  Id.

Appellate counsel is not ineffective for failing to raise every colorable claim. Wilson v. Hurley, No. 03-3481, 2004 WL 1941300 (6th Cir. Aug. 30, 2004), cert. denied, 543 U.S. 1160 (2005); Coleman v. Mitchell,  268 F.3d 417, 430 (6th Cir.), cert. denied, 535 U.S. 1031 (2001) (citing Jones v. Barnes, 463 U.S. 745 (1983)). Only when the issues not presented are clearly stronger than those presented will the presumption of effective assistance of counsel be overcome.  Caver v. Straub, 349 F.3d 340, 348 (6th Cir. 2003); Coleman, 268 F.3d at 430 (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).

In his Rule 26(B) application to reopen, Woods raised three arguments:

1.  Appellate counsel was ineffective because he "failed to raise for direct review that trial counsel was ineffective for failing to object to the State's use of subsequent other acts testimony" in relation to the rape charge.

2. Appellate counsel was ineffective because he "failed to raise for direct review that trial counsel was ineffective for failing to object to the prosecutorial misconduct, where the State . . . argued defense counsel's opinion of the defendant's guilt."

3. Appellate counsel was ineffective because he "failed to raise for direct review, when the prosecutor denigrated defense counsel from personal opinion and associated the appellant's bad character and guilt therefrom."

(Doc. 6, RX 13.)

15

The state court of appeals addressed Wood's claims as follows.  As to the first issue, the state court found that, even if Wood could demonstrate that appellate counsel was deficient for failing to argue the claim, "he has not established that but for this deficient representation, there is a reasonable probability that he would have been successful on appeal."  (Doc. 6, RX 14, at 2.)  The court found that there was "ample evidence" that Wood raped the minor child S.L., both through the victim's testimony and the corroborating testimony of several other witnesses.  Id. Thus, the court found that this alleged error did not prejudice Wood.

As to the alleged prosecutorial misconduct, the court found that Wood had "failed to show that the performance of his appellate counsel fell below an objective standard of reasonableness" in not raising this claim.  (Doc. 6, RX 14, at 3.)  The court noted that the prosecutor has significant latitude in discussing what the evidence has shown, and moreover, the Supreme Court of Ohio has limited the circumstances under which a judgment may be reversed for prosecutorial misconduct.  Id.  In addition, the court found that Wood failed to show that but for the failure to raise the prosecutor's alleged misconduct, there is a reasonable probability that the result of the appeal would have been different.  Id. at 4.

The court finds the state court's reasoning persuasive.  Moreover, concerning prejudice, this court cannot find that the comments by the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986).  This court cannot find

16

that the state court's application of Strickland to the facts of this case was objectively unreasonable.  Washington, 228 F.3d at 702.

### 1.  Procedurally defaulted claim

In his petition, Wood raises a fourth claim relating to ineffective assistance of appellate counsel, concerning an alleged violation of Crawford v. Washington, 541 U.S. 46 (2004).  This claim was not raised in his application to reopen.  See generally doc. 6, RX 13.

All ineffective-assistance claims that Wood could have asserted, but did not, are defaulted under the Ohio doctrine of res judicata.  Jacobs v. Mohr, 265 F.3d 407, 417 (6th Cir. 2001); Coleman v. Mitchell, 244 F.3d 533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001); State v. Perry, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967) (syllabus, ¶9).  If a petitioner is barred by a state procedural rule from raising a federal claim in state court, he is not permitted to raise the issue in his habeas petition absent a showing of cause and prejudice.  Engle v. Isaac, 456 U.S. 107, 129 (1982); Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977).

The court considers four factors to determine whether a claim has been procedurally defaulted:  (1) the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim, and whether the petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the procedural sanction; (3) the court must decide whether the state procedural forfeiture is an adequate and independent state ground on

17

which the state can rely to foreclose review of the federal claim; and, (4) the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error.  Buell v. Mitchell, 274 F.3d 337, 348 (6th Cir. 2001) (citing Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986)); Jacobs, 265 F.3d at 417 (quoting Maupin).

Application of the Ohio rule of res judicata satisfies the first three factors in Maupin.  Jacobs, 265 F.3d at 417.  The fourth factor is that the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error.  "Cause" for a procedural default is ordinarily shown by "some objective factor external to the defense" which impeded counsel's efforts to comply with the state's procedural rule. Coleman v. Thompson, 501 U.S. 722, 753 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  Wood does not indicate there was cause for his failure to include this claim in his Rule 26(B) application.

The ineffective assistance sub-claim concerning an alleged violation of Crawford was not presented to the state courts, and has been procedurally defaulted.

The petition for a writ of habeas corpus should not be granted on the basis of the third ground.

18

## IV.  EVIDENTIARY RULING

The fourth ground of the petition is that Wood's conviction was obtained in violation of the Sixth Amendment because he was " prohibited from presenting relevant, probative and material expert testimony from a licensed clinical psychologist."  Wood claims that the psychologist would have testified that Wood "does not meet the diagnostic criteria for pedophilia," which Wood argues was directly relevant to the issue of guilt and actual innocence.  (Doc. 1, memorandum in support, at 23.)

The state court of appeals addressed this claim, in part, as follows:

. . . Appellant contends that the trial court abused its discretion by excluding relevant defense expert testimony by a licensed clinical psychologist who examined Appellant, conducted numerous tests on Appellant and prepared a written report of his findings and conclusions that Appellant did not meet the diagnostic criteria for pedophilia.  We disagree.

A trial court possesses broad discretion with respect to the admission of evidence.  State v. Maurer (1984), 15 Ohio St.3d 239, 265.  An appellate court will not disturb evidentiary rulings absent an abuse of discretion.  State v. Roberts, 156 Ohio App.3d 352, 2004-Ohio-962, at ¶ 14.

Appellant has cited no authority in support of his contention that the trial court abused its discretion in excluding Dr. Reed's testimony.  See App.R. 16(A)(7).  Moreover, our sister courts have held that evidence that a defendant is "typical" of a classification is inadmissible.  State v. Smith (1992), 84 Ohio App.3d 647, 657, quoting State v. Thomas (1981), 66 Ohio St.2d 518, 521, overruled in part by State v. Koss (1990), 49 Ohio St.3d 213.  Such "typical facts tend to place the defendant into a stereotype." State v. Roquemore (1993), 85 Ohio App.3d 448, 456.  A jury could then make a determination based on

19

typical facts and not the actual facts.  Id., quoting Thomas, 66 Ohio St.2d at 521.

* * * * * *

. . . such test results may not be introduced to demonstrate that a defendant is not likely to be a pedophile.  The trial court was charged with determining whether Appellant committed the charged offenses, not whether he was theoretically likely to commit such offenses.  Accordingly, we find no abuse of discretion in the trial court's exclusion of certain portions of Dr. Reed's purported testimony.

(Doc. 6, RX 9, at 12-14; Wood, 2007 WL 1583999, at *6-*7.)

As can be seen from the above excerpt, the state court based its review on Ohio state law, not federal law.  In fact, Wood presented this assignment of error to the state court as an issue of state law.  See doc. 6, RX 7, at 21-22.  Because this claim was not fairly presented to the state court as a federal claim, this court does not have jurisdiction to grant the petition on the basis of it.  Baldwin v. Reese, 541 U.S. 27 (2004); Jacobs, 265 F.3d at 415.

The "clearly established rule" is that alleged errors of state law, "especially rulings regarding the admission or exclusion of evidence," are not generally within the purview of a federal habeas court.  Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir. 1988).  See also Estelle v. McGuire, 502 U.S. 62, 69-70 (1991); Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir.), cert. denied, 540 U.S. 930 (2003).  This court must presume that the Ohio state courts correctly interpreted Ohio evidence law in their evidentiary rulings.  Small v. Brigano, No. 04-3328, 2005 WL 1432898, at *5 (6th Cir. June 17, 2005).

20

Alleged state court errors of evidentiary rulings do not rise to the level of constitutional claims warranting habeas relief "unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." Broom v. Mitchell, 441 F.3d 392, 406 (6th Cir. 2006), cert. denied, 549 U.S. 1255 (2007). See also Bugh, 329 F.3d at 512. Courts have defined the category of errors that are fundamentally unfair very narrowly. Bugh, 329 F.3d at 512. Wood has not made the case that his claim fits within this narrow category.

Even had the claim been fairly presented to the state courts as a federal claim, it would not present a basis for habeas relief. The petitioner and the respondent both invoke Chambers v. Mississippi, 410 U.S. 284, 302 (1973), for the proposition that an accused has a fundamental right to present witnesses in his own defense. (Doc. 6, at 26; doc. 9, at 40.) However, the Supreme Court has noted that the right to present a defense is not absolute. Ferensic v. Birkett, 501 F.3d 469, 475 (6th Cir. 2007) (citing Taylor v. Illinois, 484 U.S. 400, 409 (1988) (accused does not have "unfettered right" to offer testimony that is inadmissible under rules of evidence). The Court has found that a "defendant's right to present evidence may be subject to restrictions, provided that the restrictions are not 'arbitrary or disproportionate to the purposes they are designed to serve.'" Giles v. Schotten, 449 F.3d 698, 704 (6th Cir. 2006), cert. denied, 549 U.S. 1036 (2006) (quoting Rock v. Arkansas, 483 U.S. 44, 55-56 (1987)).

21

In Chambers, the disputed evidence "was highly relevant and strongly exculpatory because another person had allegedly admitted to committing the crime for which Chambers was found guilty." Washington v. Renico, 455 F.3d 722, 735 (6th Cir. 2006), cert. denied, 549 U.S. 1306 (2007) (citing Chambers, 410 U.S. at 300-301). The disputed evidence in this case, as the state court's discussion above makes clear, is neither as probative nor as exculpatory as the evidence in Chambers. See, e.g., Washington, 455 F.3d at 735. Rather, Wood's theory is the evidence would have shown he was unlikely to commit such crimes.

The Supreme Court, in Montana v. Egelhoff, 518 U.S. 37, 53 (1996), specifically rejected the possibility that due process requires that "all competent, reliable evidence must be admitted." Pierce v. Thaler, No. 08-70042, 2009 WL 4572839, at *5 (5th Cir. Dec. 7, 2009). The Supreme Court has recognized that:

> States have broad authority to promulgate rules that exclude evidence so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve." United States v. Scheffer, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (citing Rock v. Arkansas, 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (internal citations omitted)). Accordingly, the Constitution leaves judges "wide latitude" to exclude evidence that is only "marginally relevant." Crane, 476 U.S. at 689, 106 S.Ct. 2142.

Baze v. Parker, 371 F.3d 310, 323-324 (6th Cir. 2004), cert. denied, 544 U.S. 931 (2005) (summarizing Supreme Court precedent). In his appeal, Wood did not argue that Ohio's evidentiary rules were arbitrary or disproportionate; rather, he argued that the trial judge had abused his discretion. (Doc. 6, RX 7, at 21-22.) This court

would not find that the state court's decision was contrary to U.S. Supreme Court precedent.

Because this claim was not fairly presented to the state courts as a federal claim, the petition should not be granted on the basis of the fourth ground.

## V.  SUFFICIENCY OF THE EVIDENCE

The fifth ground of the petition is that the evidence at trial "was insufficient to prove the offense of vaginal intercourse beyond a reasonable doubt."

On appeal, Wood argued both that the evidence was insufficient to sustain his conviction, and also that his conviction was against the manifest weight of the evidence.  (Doc. 6, RX 7, at 23-29.)  The state court of appeals, utilizing a hybrid type of review which is apparently in common use in the Ninth District, rejected his claims.  (Doc. 6, RX 9, at 14-25; Wood, 2007 WL 1583999, at *7-*12.)

The Supreme Court of Ohio has stated that:  "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."  State v. Thompkins, 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546 (1997).  Whether the evidence is legally sufficient to sustain a verdict is a question of law.  Id.  A manifest weight of the evidence claim concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other."  Thompkins, 78 Ohio St.3d at 387, 678 N.E.2d at 546.  When reviewing a weight of the evidence claim, an appellate court sits as a "thirteenth juror," and reviews the jury's resolution of conflicting

23

testimony.  See Tibbs v. Florida, 457 U.S. 31, 42 (1982).  Thompkins was intended
to signal Ohio appellate courts "that it is improper to apply the same standard of
review for questions involving the weight and sufficiency of evidence." Thompkins,
78 Ohio St.3d at 390, 678 N.E.2d at 549 (Cook, J., concurring).

Despite Thompkins, the Ohio Court of Appeals for the Ninth District
conflates the review of these two "quantitatively and qualitatively different" legal
concepts.  An oft-cited case provides the type of review applied in that district:

> Because sufficiency is required to take a case to the jury, a finding that
> a conviction is supported by the weight of the evidence must
> necessarily include a finding of sufficiency.  Thus, a determination that
> [the defendant]'s conviction is supported by the weight of the evidence
> will also be dispositive of the issue of sufficiency.  In that regard, we
> will first look to see if [the defendant]'s conviction is supported by the
> weight of the evidence.

State v. Roberts, No. 96CA006462, 1997 WL 600669, at *2 (Ohio Ct. App. Sept. 17,
1997).  In fact, this was the standard used by the court of appeals in this case:  "we
will address Appellant's claim that his conviction was against the manifest weight
of the evidence first, as it is dispositive of Appellant's claim of insufficiency."  (Doc.
6, RX 9, at 15; Wood, 2007 WL 1583999, at *8, citing Roberts.)  After having
discussed the weight of the evidence, the court then ruled:

> As this Court has disposed of Appellant's challenges to the weight of
> the evidence, we similarly dispose of his challenge to its sufficiency.
> Necessarily included in this Court's determination that the jury verdict
> was not against the manifest weight of the evidence, is a
> determination that the evidence was also sufficient to support the
> convictions.

(Doc. 6, RX 9, at 24-25; Wood, 2007 WL 1583999, at *12, citing Roberts.)

There are double jeopardy concerns, not raised in this case, which argue against this type of review.  For example, the U.S. Supreme Court has found that a reversal based on the weight of the evidence does not preclude retrial on double jeopardy principles.  Tibbs, 457 U.S. at 43-44.  A reversal based on the insufficiency of the evidence, on the other hand, absolutely shields the defendant from retrial.  Id. at 41.

In any event, this court does not rule on the basis of whether the Ohio state courts have applied state law correctly, or consistently.  Rather, the question before this habeas court is whether the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court.  Wood argues that the evidence was "insufficient to prove the offense of vaginal intercourse beyond a reasonable doubt."  (Doc. 1, memorandum in support, at 24.)

Under U.S. Supreme Court precedent, a sufficiency of the evidence claim is reviewed by determining whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Bagby v. Sowders, 894 F.2d 792, 794 (6th Cir.) (en banc), cert. denied, 496 U.S. 929 (1990).

As discussed above, the state court did not apply the Jackson v. Virginia sufficiency of the evidence standard, but rather examined the claims under a manifest weight of the evidence standard:

> "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.

(Doc. 6, RX 9, at 24-25; Wood, 2007 WL 1583999, at *8.)

A review based on a manifest weight of the evidence standard, which concerns the inclination of the greater amount of evidence to support one side of the issue rather than the other, Thompkins, 78 Ohio St.3d at 387, 678 N.E.2d at 546, is not "necessarily" dispositive of whether that same evidence satisfied the state's burden on the essential elements of the crime as a matter of law.  See generally Jackson, 443 U.S. at 319.

Thus, because Jackson was not applied by the state court, this court must determine whether the state court's decision was contrary to U.S. Supreme Court precedent.  A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price, 538 U.S. at 640.

Under Jackson, the habeas court does not make its own subjective determination of guilt or innocence.  Russell v. Anderson, No. 1:07CV3434, 2008 WL 4534144, at *3 (N.D. Ohio Oct. 6, 2008) (citing Herrera v. Collins, 506 U.S. 390, 402 (1993)); Talley v. Hageman, 619 F.Supp.2d 407, 416 (N.D. Ohio 2008) (citing Herrera).  This court does not "substitute its determination of guilt for that of the

26

factfinder and may not weigh the credibility of the witnesses." Dover v. Warden, Belmont Corr. Inst., No. 5:08CV2130, 2009 WL 1940728, at *14 (N.D. Ohio July 2, 2009). It is the responsibility of the trier of fact "to reasonably resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Nali v. Phillips, 630 F.Supp.2d 807, 816 (E.D. Mich. 2009).

A sufficiency of the evidence claim "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Sanford v. Yukins, 288 F.3d 855, 860 (6th Cir.), cert. denied, 537 U.S. 980 (2002) (quoting Jackson, 443 U.S. at 324 n.16). Thus, the federal court must look to state law to determine the elements of the crime. Cameron v. Birkett, 348 F.Supp.2d 825, 838-839 (E.D. Mich. 2004) (quoting Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999), cert. denied, 528 U.S. 1170 (2000)).

Wood was not charged with "the offense of vaginal intercourse," of course. Count One of the indictment charged him with rape, involving "sexual conduct" with a minor child under the age of ten, in violation of Ohio Rev. Code § 2907.02(A)(1)(b)(B). (Doc. 6, RX 1, indictment.) Count Two of the indictment charged him with gross sexual imposition, involving "sexual contact" with a minor child under the age of thirteen, in violation of Ohio Rev. Code § 2907.05(A)(4). Id.

On direct appeal, concerning the rape charge, Wood argued that the state failed to establish that he had engaged in sexual conduct with S.L., "or, in other words, that a crime took place at all." (Doc. 6, RX 7, at 25.) He also claimed that the state failed to establish that the victim was less than ten years old when the

27

rape offense took place. Id. at 26. In addition, Wood contended that "there was no physical evidence whatsoever" to corroborate S.L.'s story. Id.

As to Count One, Rape, the court of appeals quoted the definition of "sexual conduct" from the statute:

> . . . vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

(Doc. 6, RX 9, at 16-17; Wood, 2007 WL 1583999, at *8, quoting R.C. 2907.01(A).) The court summarized the evidence which was presented at trial.

S.L. and her mother moved in with Wood in July 2004, at which time S.L. was nine years of age. (Doc. 6, RX 9, at 2; Wood, 2007 WL 1583999, at *1; see also doc. 6, Trial Tr., at 238.) S.L. testified at trial that Wood got on top of her in bed during the night on more than one occasion. She also testified that Wood "placed his private inside of my private." (Doc. 6, RX 9, at 18; Wood, 2007 WL 1583999, at *9; see also doc. 6, Trial Tr., at 228, 230, 232.) Her mother testified that, after some initial reluctance to discuss the matter, S.L. "consistently recounted the details of her encounters" with Wood, and that S.L. consistently stated that Wood sexually assaulted her every night that she stayed at his house. Id. In addition, a social worker testified as to her interview of S.L., and her recitation of the abuse that S.L. recounted to her mirrored S.L.'s testimony before the court. (Doc. 6, RX 9, at 19; Wood, 2007 WL 1583999, at *10.)

28

Wood repeatedly argues that he could not have committed any such crime because he was not at the Put-in-Bay birthday party weekend in early October 2004.  See, e.g., doc. 9, at 13.  However, S.L. did not testify to a specific date, but rather discussed a time in response to a question about "a couple of days" before her birthday, when, according to S.L., "[Wood] did the same thing as he always did." (Doc. 6, Trial Tr., at 230.)  S.L.'s testimony overall was not limited to a single incident, or a single weekend.  See, e.g., doc. 6, Trial Tr., at 226, 229.

It is not the role of this habeas court to weigh the credibility of the witnesses, or to resolve alleged conflicts in testimony.  Viewing the evidence in the light most favorable to the prosecution, the court finds that a rational trier of fact could have found the essential elements of the crime of rape beyond a reasonable doubt. Jackson, 443 U.S. at 319.

Regarding Count Two, gross sexual imposition with K.S., the court of appeals quoted the definition of "sexual contact" from the statute:

> . . . any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

(Doc. 6, RX 9, at 20; Wood, 2007 WL 1583999, at *10, quoting R.C. 2907.01(B).)

The abuse of K.S. took place when she was four years old, in the fall of 2000. She told her mother told Wood had "touched her," and subsequently she was interviewed by Children's Services.  (Doc. 6, RX 9, at 21; Wood, 2007 WL 1583999, at *10.)  K.S. was frightened by the experience of testifying at trial, however, and

could not testify completely.  However, she testified that she told Dr. LeSure, a

psychologist, the truth about what Wood had done to her.

> Dr. LeSure testified that K.S. also told her about Appellant's sexual
> abuse.  Dr. LeSure testified that K.S. responded to her inquiries about
> the sexual abuse with "extreme anxiety."  K .S. told Dr. LeSure that
> Appellant abused her " [l]ike every night."  She told Dr. LeSure that
> Appellant would "put his mouth on her private, his hand on her
> private, and his private on her private."  She also told Dr. LeSure that
> Appellant told her not to "tell anyone."

(Doc. 6, RX 9, at 21-22; Wood, 2007 WL 1583999, at *11.)

Viewing the evidence in the light most favorable to the prosecution, the court

finds that a rational trier of fact could have found the essential elements of the

crime of gross sexual imposition beyond a reasonable doubt.  Jackson, 443 U.S. at

319.

The state court of appeals set forth the relevant elements of the offenses, and

explained the justification for the convictions.  Viewing the evidence in the light

most favorable to the prosecution, the court found competent, credible evidence with

which a rational jury could have found the essential elements of the crime beyond a

reasonable doubt.

To grant habeas relief, the federal court does not determine whether the state

decision is erroneous or incorrect.  Rather, the court must determine whether the

state court decision was contrary to federal law.  Williams, 529 U.S. at 410-12;

Lorraine, 291 F.3d at 422.  Here, the court does not find that the state court

decision applied the law regarding the sufficiency of evidence claim contrary to the

law as set forth in Jackson v. Virginia.  The petition should not be granted on the

fifth ground.

## VI.  SUMMARY

The petition for a writ of habeas corpus should be denied.  Wood failed to demonstrate that any of the state court's decisions on the first three grounds, alleging ineffective assistance of counsel, was an unreasonable application of, or contrary to, U.S. Supreme Court precedent.

The fourth ground (evidentiary ruling) was not fairly presented to the state courts as a federal claim.   As to the fifth ground, Wood failed to show that the state court applied the law regarding the sufficiency of evidence claim contrary to the law as set forth in Jackson v. Virginia.

## RECOMMENDATION

It is recommended that the petition for a writ of habeas corpus be DENIED.

Dated:   Aug. 12, 2010                   /s/ Kenneth S. McHargh
                                         Kenneth S. McHargh
                                         United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's

order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).